## HARTIGAN *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 72. Submitted December 6, 1904.—Decided January 3, 1905.

A cadet at the West Point Military Academy is not an officer of the United States Army within the meaning of §§ 1229, 1342, Rev. Stat., and, if delinquent, may be dismissed by the President without trial and conviction by court-martial.

APPELLANT filed a petition in the Court of Claims to have declared void his dismissal from the United States Military Academy at West Point, and for judgment for his pay as a cadet from July 27, 1883, to July 1, 1889, amounting to $3,417.

The appellant was duly appointed a cadet in the Military Academy on the first day of July, 1880, and served as such until the twenty-seventh of July, 1883, when he was summarily dismissed, by order of the President, upon charges of maltreating a new cadet upon guard, as well as other improper conduct. After the dismissal of appellant another cadet was appointed to succeed him, was duly graduated from the Academy, and appointed and commissioned a second lieutenant in the Army, and subsequently a captain of the Twenty-fifth Regiment of Infantry.

The appellant, subsequently to his dismissal, presented petitions respectively to the Adjutant General of the Army and to the Secretary of War, in which he asserted his innocence of the charges made against him, and prayed for reinstatement or trial by court-martial. He also presented a petition April 21, 1888, to the President, asking for a revocation of the order of dismissal, a trial by court-martial, and for an order assigning and appointing him to the Army as of the date of the assignment of the last graduate of his class. The petitions were all denied.

The Court of Claims held that he was not entitled to recover, and dismissed his petition. 38 C. Cl. 346.

*Mr. L. T. Michener* and *Mr. W. W. Dudley* for appellant:

Appellant was an officer in the sense of § 2, Art. 2, of the Constitution. He was appointed pursuant to § 1315, Rev. Stat., and took the oath presented by § 1320. Cadets are subject to perform duty, § 1323, to courts-martial, § 1326, and receive a salary, § 1339. Their service is actual service in the Army. *United States* v. *Morton,* 112 U. S. 1; their status that of officers, *United States* v. *Hartwell,* 6 Wall. 385, 393. Similar rules apply to cadets at the Naval Academy, Rev. Stat. §§ 1511, 1528; *United States* v. *Baker,* 125 U. S. 646; *Fitzpatrick* v. *United States,* 37 C. Cl. 332; *Perkins* v. *United States,* 20 C. Cl. 438; *S. C.,* 116 U. S. 483; *Jasper's Case,* 38 C. Cl. 202; *United States* v. *Hartwell,* 95 U. S. 760; *United States* v. *Cook,* 128 U. S. 254.

The President has not the legal authority to dismiss a cadet in the Military Academy in time of peace except upon and in pursuance of the sentence of a court-martial. § 1229 Rev. Stat.; § 5, Act of July 13, 1866, 14 Stat. 92; *Blake* v. *United States,* 103 U. S. 227; *Gratiot's Case,* 1 C. Cl. 258; 2 Story Const. § 1537; *McBlair's Case,* 19 C. Cl. 528, 541; Sunderland Stat. Con. § 203.

The law provided a military tribunal by which appellant could have been tried. Rev. Stat. §§ 1229, 1326; Arts. of War, §§ 71–114; 17 Stat. 604.

Cadets are not merely candidates. This action for pay will lie as brought. *United States* v. *Perkins,* 116 U. S. 483.

*Mr. Assistant Attorney General Pradt* and *Mr. Assistant Attorney George M. Anderson* for the United States:

Claimant was not an officer within the intent of § 1229 Rev. Stat. For the various acts establishing the position of cadet, see 1 Stat. 366; Act of July 16, 1798; Act of March 16, 1802, 2 Stat. 132, 137; Act of April 29, 1812, 2 Stat. 720; § 3, Act of June 18, 1878. A West Point cadet is an enlisted man. As to what is enlistment, see *Erichson* v. *Beach,* 40 Connecticut, 283; *In re Grimley,* 137 U. S. 147; §§ 1315–1323

Rev. Stat.; *Babbitt* v. *United States*, 16 C. Cl. 204; *S. C.*, affirmed 104 U. S. 767; 1 Op. Atty. Genl's, 276, 290; compare provisions in Rev. Stat. §§ 1116–1119 for enlistment of private soldiers; *United States* v. *Watson*, 130 U. S. 82. The claimant by his contract with the Government bound himself to obey the Articles of War, which were enacted under § 1342 Rev. Stat. Under Arts. of War, 4 and 99, officer means commissioned officer.

The status of naval cadets differs from that of military cadets.

Whatever claimant's status, he is not protected under § 1229 Rev. Stat. *Blake* v. *United States*, 103 U. S. 227, 236; *Mullan* v. *United States*, 140 U. S. 240; *Parsons* v. *United States*, 167 U. S. 334; *Shurtleff* v. *United States*, 189 U. S. 314.

MR. JUSTICE McKENNA, after making the foregoing statement, delivered the opinion of the court.

The contention of appellant is that, as a cadet, he was an officer in the Army, within the meaning of section 1229 of the Revised Statutes of the United States, and could only have been dismissed from the Academy upon trial and conviction by court-martial, as provided in that section.

That section provides as follows: "The President is authorized to drop from the rolls of the Army for desertion any officer who is absent from duty three months without leave; and no officer so dropped shall be eligible for reappointment. And no officer in the military or naval service shall in time of peace be dismissed from service except upon and in pursuance of the sentence of a court-martial to that effect, or in commutation thereof."

In the Articles of War, enacted by section 1342 of the Revised Statutes, the word "commutation" is changed to "mitigation." Art. 99.

The first impression of claimant's contention is that it ignores obvious distinctions, and makes a state of preparation for a position the same as the position itself, and claims its

sanction for one who is not bearing its responsibilities or capable of discharging its duties. And an examination of the Revised Statutes relating to the organization of the Army confirms the impression.

Manifestly, it is impossible to reproduce all the sections of the Revised Statutes applicable to the military establishment, and we will only observe that they distinguish between the Army proper and the Military Academy, and make a distinction between an officer and a cadet. A few citations only are necessary.

Title XIV of the Revised Statutes of the United States provides for the organization of the Army of the United States. The name, rank and function of each officer is provided for, and section 1213 explicitly states when a cadet shall become an officer. That section enacts that when a cadet shall have regularly graduated from the Academy he "shall be considered a candidate for a commission in any corps for whose duties he may be deemed competent." He then becomes a commissioned officer. Prior to that time he is denominated a cadet, appointed as a cadet, and provision made for him under that name and state. He becomes an officer when he ceases to be a cadet; that is, when he has finished his pupilage; or, as section 1213 expresses it, when "he has gone through all his classes and received a regular degree from the academic staff" and commissioned. And his government while a cadet is provided for in chapter 5 of title XIV.

A cadet may be in the Army (section 1094), may be an officer in a certain sense as distinguished from an enlisted man, as it is contended by counsel for the Government he is, but nevertheless section 1229 does not apply to him. That section is one of a number of provisions for the organization and government of the Army, distinct from and having no relation whatever to the provisions for the government of the Military Academy and the cadets. Section 1229 is made part of, and the word "officer" given exact definition by section 1342, which provides as follows:

"Sec. 1342. The armies of the United States shall be governed by the following rules and articles: The word officer, as used therein, shall be understood to designate commissioned officers; the word soldier shall be understood to include non-commissioned officers, musicians, artificers, and privates, and other enlisted men, and the convictions mentioned therein shall be understood to be convictions by court-martial."

By article 99 it is enacted:

"No officer shall be discharged or dismissed from the service, except by order of the President, or by sentence of a general court-martial; and in time of peace no officer shall be dismissed, except in pursuance of the sentence of a court-martial, or in mitigation thereof."

It is only a commissioned officer, therefore, who is entitled to the protection of a general court-martial, and a cadet is not a commissioned officer.

The argument of appellant, contending against this construction of the statute, is not easy to reproduce or make clear, and it involves the anomaly that there can be an officer in the Army of the United States who is not covered by the Articles of War, notwithstanding the declaration of section 1342, that the Armies of the United States shall be governed by those articles.

The object of the argument is to make independent section 1229 of section 1342, and to give a cadet the protection expressed by the former, on the ground that a cadet is an officer, but not a commissioned officer. That a cadet is an officer is deduced from the fact that he is appointed by the President, takes an oath to obey his "superior officers," and receives pay. But, as we have already intimated, it is not necessary to dispute that a cadet is an officer. Whether he is or not is not the question in the case. The question is, whether section 1229 applies to him, and to so construe it would seemingly give it no application except to cadets (and officers in the naval service), and transfer it from the government of the Army to the government of the Academy; and, we may ob-

serve, would render the distinction implied by it between a time of peace and a time of war almost meaningless. It is nevertheless contended by appellant that section 1229 is unaffected by section 1342 and the Articles of War, but is a part of section 1326, which gives the Superintendent of the Academy the power to convene general courts-martial for the trial of cadets. In other words, the contention is that section 1326 is not merely a grant of power to the Superintendent of the Academy to convene courts-martial for the trial of cadets, but commands him to do so. And it would seem necessarily for every infraction of discipline. What, it may be asked, under the contention of appellant, is the relation between section 1326 and section 1325? By the latter section there can be deficiency in studies as well as conduct. Can there be no discharge from the Academy for deficiency in studies except upon and in pursuance of a court-martial to that effect?

The cases cited by appellant do not conflict with these views. *United States* v. *Morton,* 112 U. S. 1, decides only that the time of service as a cadet was actual time of service in the Army within the meaning of the statutes giving longevity pay to officers. In *United States* v. *Baker,* 125 U. S. 646, and *United States* v. *Cook,* 128 U. S. 254, statutes giving longevity pay to officers in the Navy were construed, and it was held that a cadet midshipman was an officer of the Navy. The reasoning of the court, however, has no application to the construction of sections 1229 and 1342.

The power of the President to dismiss a delinquent cadet we do not understand is questioned, except as that power is affected by sections 1229 and 1342. We may, however, refer to *Matter of Hennen,* 13 Pet. 230; *Blake* v. *United States,* 103 U. S. 227, 236; *Mullan* v. *United States,* 140 U. S. 240; *Parsons* v. *United States,* 167 U. S. 324; *Shurtleff* v. *United States,* 189 U. S. 311.

*Judgment affirmed.*