Hunt, J.,
delivered the opinion of the court:
The claimant was a midshipman in the United States Navy on the 10th of July, 1871, and was on duty on the United States ship Supply. On that date he made application to the Secretary of the Navy to he granted a leave of absence of four mouths, “as he wished to tender his resignation as a midshipman in the United States Navy at the expiration of that time.”
In accordance with this application the claimant was detached from the Supply, leave of absence for the period asked was accorded him, and his resignation as a midshipman vms accepted, to take effect at the expiration of his four months* leave.
Whether the claimant’s letter was intended as an unequivocal and immediate resignation, or was merely the announcement of a desire or purpose to resign at a future day, it is unimportant to stop to consider.
It was interpreted by the Secretary of the Navy as an absolute resignation. In this interpretation the claimant concurred. He enjoyed his furlough, took his pay, and made no remonstrance or complaint against being dropped from the service.
On the 2d March, 1874, the following act of Congress was approved:
“AN ACT to restore William Killmrn. of San Francisco, California, to tlie Navy of the United States as an ensign.
“ Be it enacted, <£r., That the President of the United States he, and he is hereby, authorized to restore William Kilburn to *46 the Navy of tlie United States as an ensign, at tlie foot of the class of eighteen hundred and seventy, of which he was a member at the time of his resignation.”
Under this act the claimant brings this suit, and asks judgment for the pay which he alleges is “ due him under his commission as ensign in the naval service on leave from July 13,1871, to April 8f 1874,” amounting to $2,188.83.
It is to be observed that during this interval the claimant was neither actually nor constructively in the naval service. He was neither on duty nor on leave. He had resigned his commission, and could have no claim to pay unless such claim was conferred by some law of Congress.
We do not consider that the statute on which he relies was intended to confer or did really confer any such right. The language of the act authorized the President to restore the claimant to the Navy as an ensign at the foot of the class of 1S70, of which he was a member at the time of his resignation. If it had been intended to bestow upon him the pay of an ensign from that time, it would have been easy to say so in express terms. Such an intention cannot be fairly inferred from the language employed. That language is, “ to restore him to the Navy ” in a higher rank than that which he held at the time of his resignation — to bring him back as an ensign when he had left as a midshipman.
Nor is his claim in any degree strengthened by the clause in the act which locates him “ at the foot of the class of 1870, of which he was a member at the time of his resignation.” The plain purport of the clause was merely to assign him a definite rank on being restored to the service. It is by no means certain that the rank thus assigned him was the same or equivalent to that which he would have reached had he remained in the service. He might have failed to obtain his promotion from midshipman to ensign when his classmates obtained theirs. He might, on the other hand, have passed at the head instead of the foot of his class, and so have been entitled to a higher rank than that which the statute assigned hirii. Hence, it became eminently proper to determine his precise position in his new grade, and this was distinctly done by placing him at the foot of his former class.
In all the cases referred to, the parties to whom back pay has been allowed have been considered by Congress to have been *47 illegally or unjustly or inadvertently-dismissed tire sendee. In order to reinedy the wrong- or repair tbe injustice of sucli dismissal, it lias been considered both, just and humane that its revocation should be complete, and should relate back to the day of the order of dismissal, so as to make the party entitled to full pay, as though no such order had ever been made. (Winters v. The United States, 3 C. Cls. R.; Smith v. United States, 3 C. Cls. R., 140.) But such arrearages of pay have in. every instance been allowed only under acts of Congress authorizing the beneficiaries under them to assume a definite rank from a past date. This doctrine is fully expounded in the case of Major Collins (ante, p. 22).
In this instance,however, the claimant is assigned a rank for the future only, and not for the past; and there is nothing in the statute which manifests a purpose to allow him pay for the period during which, by his voluntary resignation, he had severed his connection with the service.
The counsel for the claimant has argued with ingenuity, that there are two classes of private acts of this nature; that in one class, pay, when a party was out of the service, is prohibited in 'express terms; while in the other class no such prohibition is expressed, and from the silence of the statute the right to pay is to be implied. We do not find that it has been usual to express such a prohibition except iii those cases where officers are authorized to bo restored as of a previous specified date. This might entitle them to pay from such time if the contrary were not expressly declared.
Much stress is laid by the claimant on the circumstance that under his commission he appears to have been appointed an ensign from the 13th day of July, 1871. But the right of the claimant springs from the language of the statute and not of the commission. The 'commission is to be interpreted by the law that authorized the apimintment. It is merely evidence of the appointment. If the commission transcends the limits of the appointment, by substituting- an erroneous date for that fixed by the statute, the commission becomes to that extent-inoperative and void. The error cannot prevail, but must give way to the true date. The acts of appointing to office and commissioning the person appointed are two separate and distinct acts, arising out of two separate and distinct sections of the Constitution. (Marbury v. Madison, 1 Cranch, 157.) The *48 argument of the claimant confounds these two independent and distinct acts, and, in our judgment, ought not to prevail.
It is therefore ordered, adjudged, and decreed that the petition be dismissed.