Nott, Ch. J.,
delivered the opinion of the court:
The Revised Statutes (sec. 1453) provide that when a naval officer is incapacitated for active service and his incapacity is the result of an incident of the service, he shall be retired with the retired pajr allowed by section 1588. The subsequent Act 3d March, 1899 (30 Stat. L., p. 1007, sec. 11), provides as follows:
“Any officer of the Navjr, with a creditable record, who has served during the civil war, shall, when retired, be retired with the rank and three-fourths’ of the sea pay of the next higher grade.”
It has been held that a midshipman at the Naval Academy is an officer of the Navy, and that while-pursuing his education there that he is serving as such. (Baker’s case, 23 C. Cls. R., 181; 125 U. S., 646.)
*204 It has also been held that a cadet midshipman at the Naval Academy is an officer of the Navy, and that his service there is to be reckoned when estimating his longevity pay. (United States v. Cook, 128 U. S., 254.)
But these decisions do not touch the question involved in the present case. The claimant did not enter the Naval Academy until July 21,1864. He was in service there as a student until he was graduated, June 2, 1868. He was retired September 21, 1899, with the rank he then held, commander. The question therefore is whether an undergraduate at the Naval Academy pursuing his studies there during the period or a part of the period of the civil war, was, within the intent of the Navy personnel act 3d March, 1899, “an officer of the Navy, with a creditable record, who has served during the civil war.”
To give to the statute the interpretation for which the claimant contends would be to reduce the significance of its language to amere date. If that was'the legislative intent, Congress might as well, or better, have provided that all officers of the Nav}^ having a creditable record, who served at any time before the 30th of June, 1865, shall be retired with the rank and three-fourths of the pay of the next higher grade. To the court it seems plain that Congress intended to make a highly favorable exception in the general rule of retirement in favor of officers who were in fact veterans of the civil war.
The decisions before cited do, indeed, hold that an undergraduate of the Naval Academy is an officer and that his academic course is service;, and the statute does, indeed, say that an officer with a creditable record, who served during the civil war, shall be retired with the rank and three-fourths pay of the next higher grade. Taken literally, the words of these decisions and this statute are applicable to the claimant’s case, but statutes are to be interpreted so as to give, effect to the purpose of the law-making power; and to the legislative intent is to ascribed a reasonable and not a technical meaning; and in ascertaining that meaning it is the duty of courts to consider the facts and circumstances which induce the legislation. The purpose of Congress in the legislation before us was not to fix bj" the words “during the civil war ” dates at *205 which the benefit tf the statute should begin and end, but to bestow a suitable benefit upon actual officers who actually served in. the civil war, or at least who voluntarily offered and obligated themselves to encounter its hardships and dangers.
The counsel for defendants has raised a jurisdictional question, to wit, that the finding of the retiring board, approved by the Secretary of the Navjq is final and can not be reviewed by the courts. But the facts being undisputed and a matter of record, it is manifest that the decision in regard to the claimant’s right to retirement upon the rank of a higher grade than that which ho held on the active list turned upon the proper construction of an act of Congress. Under the decision of the Supreme Court in the recent case of Medbury v. The United States (173 U. S., 492), such a decision, where it is adverse to a claimant and involves the determination of a question of legal right is subject to judicial review.
The petition dismissed.